JS-6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

FILED
CLERK, U.S. DISTRICT COURT

NOV 18, 2016

CENTRAL DISTRICT OF CALIFORNIA
BY: ____BH____ DEPUTY

Antonio Aceves et al.,

                    Plaintiffs,

        v.

Autozone Inc.,

                 Defendant.

EDCV 14-2032-VAP (DTBx)

**ORDER RE MOTIONS FOR**
**FINAL APPROVAL OF CLASS**
**ACTION SETTLEMENT AND**
**ATTORNEYS' FEES, COSTS,**
**AND INCENTIVE AWARDS**

On August 12, 2016, named Plaintiffs Antonio Aceves Jr. and Jesse Alvarez filed an unopposed Motion for Attorneys' Fees, Costs, and Incentive Awards. ("Attorneys' Fees Motion," Doc. No. 51.)  On October 17, 2016, Plaintiffs filed a Motion for Final Approval of Class Action Settlement.  ("Settlement Motion," Doc. No. 52.)  On November 3, 2016, Plaintiffs filed an Amended Motion for Attorneys' Fees, Costs, and Incentive Awards.  ("Amended Attorneys' Fees Motion," Doc. No. 55.)  After consideration of the papers filed in support of the Motions, the Court GRANTS the Motions.

## I. BACKGROUND

### A.  Procedural History

Plaintiffs applied online for employment with AutoZone.  (Settlement Motion at 3; Complaint, Doc. No. 1, "Complaint," at ¶¶ 16, 21.)  At the conclusion of the online application, Plaintiffs viewed a disclosure that stated AutoZone could procure a background check and requested applicants authorize AutoZone to do so. (Settlement Motion at 3.)  Plaintiffs allege that Defendant procured a background

check, as defined by 15 U.S.C. § 1681a(d)(1)(B) and 15 U.S.C. § 1681a(e); a consumer credit report, as defined by Cal. Civ. Code § 1785.3(c); and an investigative consumer report, as defined by Cal. Civ. Code § 1786.2(c). (Complaint at ¶¶ 17, 22.)  Plaintiffs contend the disclosure they signed at the end of the application process contained extraneous terms, conditions, and other information which violates the written disclosure requirements of Federal Credit Reporting Act ("FCRA") pursuant to 15 U.S.C. § 1681b(b)(2), as well as comparable California state statutory provisions.  (Settlement Motion at 3). Plaintiffs argue that Defendant was thus liable under 15 U.S.C. § 1681n. (Settlement Motion at 3.)  Plaintiffs further allege Defendant took adverse actions against some employee applicants, in violation of the FCRA and comparable California state provisions.  (Settlement Motion at 3-4.)

More specifically, Plaintiffs' Complaint alleges violations of: (1) 15 U.S.C. §§ 1681b(b)(2)(A) and 1681d(a); (2) 15 U.S.C. § 1681d(a); (3) California Civil Code section 1785, the Consumer Credit Reporting Agencies Act; and (4) California Civil Code section 1786, the Investigative Consumer Reporting Agencies Act.  (See generally Complaint at 16-25.)  Plaintiffs, on behalf of themselves and the class, sought (1) an award of statutory, compensatory, special, general, and punitive damages, (2) an award of attorneys' fees and costs; and (3) an award of appropriate equitable relief, including an injunction forbidding Defendant from engaging in further unlawful conduct.  (Complaint at 26-27.)

On June 8, 2016, the Court certified the class and granted preliminary approval of the class action settlement.  (Doc. No. 49.)

**B. Settlement Class**

The settlement agreement between Plaintiffs and AutoZone defines the "Settlement Class" as:

> [A]ll individuals for whom [Defendant] ordered or obtained a background check or report of any type (including, without limitation, a consumer credit report, an investigative consumer report, a criminal history report, or a reference check) from any third party, including without limitation, Edge, ADP, and/or J.J. Keller, at any time from September 30, 2012, through and including the Preliminary Approval Date, without allegedly complying fully with the disclosure and authorization requirements of the Fair Credit Reporting Act, 15 U.S.C. sections 1681 et seq.; the California Consumer Credit Reporting Agencies Act, California Civil Code section 1785, et seq.; the California Investigative Consumer Reporting Agencies Act, California Civil Code section 1786, et seq.; or any comparable provision of federal, state or local law governing background checks, consumer reports, investigative consumer reports, criminal history reports, or reference checks.  Defendant represents that there are approximately 206,650 individuals in the Settlement Class. Except as noted in this Agreement, "Settlement Class" includes "Adverse Action Subclass." There are approximately 206,388 individuals in the Settlement Class who are not in the Adverse Action subclass.

(Settlement Agreement at ¶ 46.)

The settlement agreement provides for the "Adverse Action Subclass" as follows:

> [A]ll individuals that Released Parties subjected to an adverse action (as defined by the Fair Credit Reporting Act, 15 U.S.C. section 1681, et seq.) including, without limitation, a decision not to offer employment, promotion or transfer or to terminate employment, at any time from September 30, 2012, through and including the Preliminary Approval Date of the Settlement, based, in whole or in part, upon a background check/report of any type (including, without limitation, a credit check or report, a consumer credit report, an

investigative consumer report, a criminal history report and a
reference check) that Defendant ordered or obtained from any
third party including, without limitation, Edge, ADP, and/or J.J. Keller,
without allegedly complying fully with the disclosure and
authorization requirements and/or the pre-adverse action and adverse
action notice requirements of the Fair Credit Reporting Act, 15 U.S.C.
sections 1681, et seq., the California Consumer Credit Reporting
Agencies Act, California Civil Code section 1785, et seq., the
California Investigative Consumer Reporting Agencies Act, California
Civil Code section 1786, et seq. or any comparable provision of
federal, state or local law governing background checks, credit
checks, consumer reports, investigative consumer reports, criminal
history reports or reference checks. Defendant represents that there
are approximately 262 individuals in the Adverse Action Subclass.

(Settlement Agreement at ¶ 3.)

### C. Settlement Terms

The proposed settlement agreement is between the named Plaintiffs,
individually and on behalf of all members of the class and subclass, and Defendant
AutoZone.  (Settlement Agreement at 1.)  Defendant has agreed to a maximum
settlement sum of $5,700,000.  (Settlement Agreement at ¶ 87.)  The parties have
negotiated a default automatic payment procedure to minimize the burden to
participating Settlement Class members.  (Settlement Agreement ¶¶ 70, 89, 103.)
Participating Settlement Class members will receive a cash payment of $20 or, at
their option, a $40 Autozone gift card.  (Settlement Agreement at ¶¶ 47, 50).
Participating Adverse Action Subclass members are entitled either to receive a
minimum cash payment of $40 or an $80 Autozone gift card.  (Settlement
Agreement at ¶¶ 6, 7.)

In exchange for those benefits, participating Settlement Class members and
participating Adverse Action Subclass members—that is, those class and subclass

4

members who have not timely and properly opted out of the settlement—will release claims they may have arising out of or relating to facts that were or could have been alleged or asserted in the operative complaint.  The agreement to release claims includes, but is not limited to, the following:

> (i) any claim for an alleged violation of any provision of the disclosure and authorization requirements of the Fair Credit Reporting Act, 15 U.S.C. sections 1681b(b)(2)(A) and 1681d(a), et al., the California Consumer Credit Reporting Agencies Act, California Civil Code section 1785, et seq.; the California Investigative Consumer Reporting Agencies Act, California Civil Code section 1786, et seq;. or any comparable provision of federal, state or local law in any way relating to or arising out of the procurement of, use of, disclosure of intent to procure, or authorization to procure or use a consumer report, investigative consumer report, credit check, background check, criminal history report, reference check or similar report ("Settlement Class Released Claims") and (ii) any claim for an alleged violation of any pre-adverse or adverse action notice requirements of the Fair Credit Reporting Act, 15 U.S.C. section 1681, et seq., including, without limitation, 15 U.S.C. section 1681b(b)(3)(A) and 1681m; the California Consumer Credit Reporting Agencies Act, California Civil Code section 1785, et seq.; the California Investigative Consumer Reporting Agencies Act, California Civil Code section 1786, et seq; or any comparable provision of federal, state or local law in any way relating to or arising out of an adverse action ("Adverse Action Subclass Released Claims").

(Settlement Agreement at ¶ 130.)  In addition to the release noted above, Plaintiffs will release any known or unknown claims they may have had against AutoZone through the Date of Finality.  (Settlement Agreement at ¶ 133.)  Finally, all class members will "expressly waive[] and relinquish[], to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, or any other similar provision under federal or state law that purports to limit the scope of a general release."  (Settlement Agreement at ¶¶ 131, 134.)

## II.    DISCUSSION

### A. Final Approval of the Settlement

#### 1. Approval of the Settlement Terms

Under Rule 23(e) of the Federal Rules of Civil Procedure, "claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  Fed. R. Civ. P. 23(e).  A court must engage in a two-step process to approve a proposed class action settlement.  First, the court must determine whether the proposed settlement deserves preliminary approval.  Nat'l Rural Telecomms. Coop. v. DirecTV, Inc., 221 F.R.D. 523, 525 (C.D. Cal. 2004). Second, after notice is given to class members, the Court must determine whether final approval is warranted.  Id.  A court should approve a settlement pursuant to Rule 23(e) only if the settlement "is fundamentally fair, adequate and reasonable." Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1375 (9th Cir. 1993); accord In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000) (citing Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998)).

A court must balance the following factors to determine whether a class action settlement is fair, adequate, and reasonable:

1. the strength of the plaintiff's case;

2. the risk, expense, complexity, and likely duration of further litigation;

3. the risk of maintaining class action status throughout the case;

4. the amount offered in settlement;

5. the extent of discovery completed and the stage of the proceedings;

6. the experience and views of counsel;

7. the presence of a governmental participant; and

8. the reaction of the class members to the proposed settlement.

Torrisi, 8 F.3d at 1375; accord Linney v. Cellular Alaska Partnership, 151 F.3d 1234, 1242 (9th Cir. 1998); Hanlon, 150 F.3d at 1026.

"In addition, the settlement may not be the product of collusion among the negotiating parties." In re Mego Fin. Corp. Sec. Litig., 213 F.3d at 458.  Those factors are not exclusive, and one factor may deserve more weight than the others depending on the circumstances.  Torrisi, 8 F.3d at 1376.  In some instances, "one factor alone may prove determinative in finding sufficient grounds for court approval."  Nat'l Rural Telecomms. Coop., 221 F.R.D. at 525–26 (citing Torrisi, 8 F.3d at 1376).  In addition, "[t]he involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place create a presumption that the agreement is fair."  Linney v. Cellular Alaska Partnership, 1997 WL 450064, *5 (N.D. Cal. July 18, 1997), aff'd, 151 F.3d at 1234.

### a. Strength of the Plaintiffs' Case and Future Risks

As noted in the Court's preliminary approval order (Doc. No. 49) and in the Settlement Motion, the strength of Plaintiffs' claims under the FCRA is limited by the requirement that they prove Defendant's alleged violation was "willful." (Settlement Motion at 11; see also Doc. No. 49 at 13.)  Plaintiffs acknowledge that proving the "willful" requirement presented "considerable additional risk." (Settlement Motion at 11.)  Plaintiffs also acknowledge that, had they continued to litigate, they would have run the risk of having their case dismissed due to Article III standing requirements "given the lack of actual injury to class members." (Settlement Motion at 12, 13.)  Moreover, had the parties not reached the settlement

agreement, Plaintiffs would have faced the "substantial risk of incurring the expense of a trial without any recovery."  In re Toys 'R' Us FACTA Litig., 295 F.R.D. at 451.

Given the relative strength of Plaintiffs' claims, and the risks and costs associated with future complex litigation, the settlement agreement terms appear to be reasonable. Hence, this factor favors preliminary approval.

### b.  Risk of Maintaining Class Action Status Throughout Trial

The Court may revisit the certification of the class at any time before entry of final judgment. See Fed. R. Civ. P. 23(c)(1)(C).  As noted in the preliminary approval order (Doc. No. 49), there is a risk that class certification might not be maintained before entry of final judgment, this factor favors approving the proposed settlement.  See, e.g., Rodriguez v. West Publishing Corp., 563 F.3d 948, 966 (9th Cir. 2009).

Given the risks, costs, and uncertainty involved in class action litigation, it is likely that Defendant would have contested certification had a motion been filed. The uncertainty regarding Plaintiffs' ability to maintain class certification throughout the case favors approving the proposed settlement.

### c.  Settlement Amount

Defendant has agreed to a maximum settlement sum of $5,700,000. (Settlement Agreement at ¶ 87.)  The settlement agreement requires Defendant to offer participating Settlement Class members a minimum cash payment of $20 or $40 gift card and participating Adverse Action Subclass members a minimum cash payment of $40 or $80 gift card.  (Settlement Agreement at ¶¶ 6, 7, 47, 50.)  In

addition, the terms of the settlement acknowledged Defendant would no longer use "background check disclosure and authorization forms and notification process that allegedly violated applicable statutes" and that those changes were made "as a result of the Action." (Settlement Agreement ¶ 116.)

Considering the present value of the settlement amount, the probability of litigation in the absence of a settlement, the risk that Plaintiff and the class members would not succeed if the case went to trial, and the risk that a jury could award no damages, the settlement amount is within the range of reasonableness. See, e.g., Syed v. M-I LLC, No. 1:14-742, 2016 WL 310135, at *8-9 (E.D. Cal. Jan. 26, 2016) (approving a $1.6 million settlement fund on similar FCRA claims with each class member receiving approximately $16). This factor, therefore, favors final approval of the settlement.

### d. Extent of Discovery Taken in the Case

This case is in the early stages of litigation with some initial discovery having taken place. (Settlement Motion at 15.) Class Counsel claims that have exchanged and reviewed informally enough information to make an informed settlement decision. (Id.) The Defendant has produced information regarding Defendant's "online application system, hiring policies and guidelines, background check procedures, adverse action procedures, current disclosure and authorization forms, and the estimated size of the Settlement Class and adverse action subclass." (Id.) As Class Counsel has the information necessary to make an informed decision about reasonableness of the settlement and to determine that it represents a fair and favorable result for the class, this factor favors final approval of the settlement.

###### e.  Experience and Views of Counsel

The Court accepts Class Counsel's representation that the attorneys representing the class and representing Defendant are experienced in class action litigation.  (Settlement Motion at 17.)  Based on that experience, the undisputed facts, and the legal research conducted regarding Plaintiffs' claims, Class Counsel believes that the settlement "is fair, reasonable, and adequate, and in the best interest of the Settlement Class in light of all known facts and circumstances." (Settlement Motion at 16.)  This factor, therefore, favors final approval of the settlement.

###### f.  Class Members' Reaction to the Settlement

Following the mailing of 203,020 notices to class members in August 2015, no class members maintained objections.[1]  (Settlement Motion at 17; Bui Decl. at 2.)  Moreover, only 33 class members, representing 0.01% of the class, excluded themselves.  (Id.)  Where "the overwhelming majority of the class willingly approved the offer and stayed in the class," there is "at least some objective positive commentary as to its fairness."  Hanlon, 150 F.3d at 1027.  Hence, this factor favors final approval of the settlement.

###### g.  Whether the Settlement Appears Non-collusive

The settlement agreement was reached after the parties exchanged enough factual information so that both sides had a fair opportunity to evaluate fully the factual and legal issues present in this case, as well as the risks associated with further litigation.  (See generally Settlement Motion at 15-17.)  The parties

---

[1] One class member initially objected but agreed to drop her objection after speaking with Plaintiffs' counsel.  (Settlement Motion at 18 n.7; Friedl Declaration ¶ 5.)

participated in a mediation before a neutral mediator, who eventually guided them to a resolution.  (Settlement Motion at 5.)  As the settlement agreement appears to be the product of arm's-length negotiations with no indication of collusion, this factor favors final approval of the settlement.

### h. Balance of <u>Torrisi</u> Factors

When the <u>Torrisi</u> factors are balanced, the majority of the relevant factors favor settlement.  Accordingly, the Court finds the settlement agreement to be fair, reasonable, and adequate.

## 2. Approval of Notice Procedures

Rule 23 requires the Court to direct to Class Members "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  In addition, Rule 23(e)(1) requires the court to "direct notice in a reasonable manner to all class members who would be bound by the proposal."  The notice must explain in easily understood language the nature of the action, definition of the class, class claims, issues and defenses, ability to appear through individual counsel, procedure to request exclusion, and binding nature of a class judgment.  Fed. R. Civ. P. 23(c)(2)(B).  Plaintiffs must provide notice to potential opt-in class members that is "timely, accurate, and informative."  <u>See</u> <u>Hoffmann-La Rouche Inc. v. Sperling</u>, 493 U.S. 165, 172 (1989).  Likewise, claim forms must be informative and accurate.  <u>Id.</u> at 172; <u>Churchill Village, L.L.C. v. Gen. Elec.</u>, 361 F.3d 566, 575 (9th Cir. 2004) (notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard").

The Court previously accepted the proposed Notice and Claim form.  (Doc. No. 49 at 18-21.)  The Court now evaluates whether the parties executed class notice in accordance with the Court's preliminary approval order.

According to Michael Bui, a Case Manager for Simpluris, Inc., and the claims administrator in the present action, the Notice was disseminated through procedures that were in conformity with the Court's preliminary approval order. (See generally Bui Decl.)  Given the representations made by Bui that the Notice was disseminated through procedures in accordance with the Court's previous order, the Court finds that the Notice was reasonable as to its content and the method of communication.

As the terms of the settlement agreement were fair, reasonable, and adequate, and because the procedures for dissemination of the Class Notice were reasonable, the Court finds that the settlement agreement should be approved.

## B. ATTORNEYS' FEES, COSTS, INCENTIVE PAYMENT, AND SETTLEMENT ADMINISTRATION COSTS

The preliminary approval order approved allocation of settlement funds for attorneys' fees and incentive award payments.  (Doc. No. 49 at 15-17.)  Class Counsel now requests final approval of those expenditures, as well as final approval of allocations for settlement administrative expenses.  The Court addresses each in turn below.  Staton v. Boeing Co., 327 F.3d 938, 963 (9th Cir. 2003) ("[T]o avoid abdicating its responsibility to review the agreement for the protection of the class, a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement.").

### 1. Attorneys' Fees

Notwithstanding an explicit agreement to shift attorney's fees in a certified class action, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011).

Plaintiffs seek, and Defendant does not oppose, attorneys' fees in the amount of $1,400,000 to be paid by Defendant, subject to Court approval.  (Amended Attorneys' Fees Motion at 1.)  Under both California and Ninth Circuit precedent, a court may exercise discretion to award attorneys' fees from a common fund by applying either the lodestar method or the percentage-of-the-fund method. Wershba v. Apple Computer, Inc., 91 Cal. App. 4th 224, 253 (2001); Fischel v. Equitable Life Assurance Soc'y of U.S., 307 F.3d 997, 1006 (9th Cir. 2002). "Irrespective of the chosen method, 'the district court should be guided by the fundamental principle that fee awards out of common funds be 'reasonable under the circumstances.''" Alberto v. GMRI. Inc., 252 F.R.D. 652, 667 (E.D. Cal. 2008), citing In re Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1295 (9th Cir. 1990).

Plaintiffs seek to employ the percentage-of-the-fund method, whereby Class Counsel would recover approximately 24.56% of the $5,700,000 settlement fund for attorneys' fees.  (Attorneys' Fees Motion at 7.)  The Ninth Circuit's benchmark is 25%. Hanlon, 150 F.3d at 1029.  The facts of this case do not present "any unusual circumstances" to justify a departure from that benchmark. Paul, Johnson, Alston & Hunt v. Graulty, 866 F.2d 268, 272 (9th Cir. 1989).  Although the percentage-of-the-

fund calculation represents a 1.72 multiplier to the base lodestar, this is a modest increase and is not unreasonableness given the aforementioned risks, costs, and uncertainty involved in class action litigation.  See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1051 (9th Cir. 2002) (affirming a lodestar multiplier of 3.65 and noting that "courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases") (internal citation omitted); see also Wershba v. Apple Computer, Inc., 91 Cal. App. 4th 224, 255 (Ct. App. 2001) (noting that courts using the lodestar method to calculate attorney fees awards in civil class actions typically apply multipliers in the range of "2 to 4 or even higher").  Accordingly, the Court finds 25% of the settlement fund is fair and reasonable and awards Class Counsel attorneys' fees in that amount.[2]

### 2.  Incentive Award

Named Plaintiffs Aceves and Alvarez each seek an incentive award of $2,500. (Settlement Agreement at 12.)  "[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments."  Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir. 2003).

Named Plaintiffs are entitled to a reward given the risk that their role in this case will harm their future job prospects.  The incentive award requested is a modest one, in keeping with the limited efforts involved before the early resolution of the case.  Moreover, named Plaintiffs have agreed to release all potential claims against Defendants, which is a considerably broader release than the narrower releases

---

[2] Plaintiffs initially sought reimbursement for out-of-pocket expenses totaling $9,337.  Plaintiffs, however, withdrew that request in their Amended Attorneys' Fees Motion.  (See Amended Attorneys' Fees Motion at 1.)

required of class members.  Accordingly, the Court approves the incentive award.
See La Fleur v. Medical Management Intern., Inc., 2014 WL 2967475, at *8 (C.D.
Cal. June 25, 2014) (approving a $15,000 incentive payment because each named
plaintiff, unlike the remainder of the class, released all claims against the defendant
and testified that they feared their future job prospects may be harmed after being
named as plaintiffs in the action); Rodriguez v. D.M. Camp & Sons, 2012 WL
6115651, at *10 (E.D. Cal. Dec. 7, 2012) (approving preliminary class settlement
incentive award as the court was given the flexibility to award "up to $10,000.").

### 3.  Settlement Administration Costs

The Court previously approved the appointment of Simpluris Inc. to serve as
the settlement administrator.  (Doc. No. 49 at 19.)  Class Counsel now request a
settlement administration cost award of $294,000.  (Settlement Motion at 18.)  The
Court finds that award fair, reasonable, and supported by the supplied evidence.

## III.    CONCLUSION

For the reasons stated above, the Court APPROVES the class action
settlement and awards Class Counsel attorneys' fees in the amount of 25% of the
common fund.  The Court APPROVES incentive awards for named Plaintiffs
Aceves and Alvarez in the amount of $2,500 and APPROVES a settlement
administration fee of $294,000.

**IT IS SO ORDERED.**

Dated:   11/18/16

                                               Virginia A. Phillips
                                  Chief United States District Judge